Please be seated, folks. Good morning, and welcome to our court. At the outset, Judge Carnes and I wanted to introduce again and welcome again to our court Judge Paul Kelly, who comes to us from the United States Court of Appeals for the Tenth Circuit. He was appointed to that court by President Bush in 1992, has served with great distinction since then, and we are delighted to have him, and we very much appreciate his service and his help. Two brief observations before we begin. For those of you who may not be familiar with our practices, you will notice that there is a time clock letting you know how much time you still have left, and there are lights. There's a green light, which obviously means you may proceed, an amber or yellow light, which is a two-minute warning, and a red light indicating that your time is up. We'd be much appreciative if, when you see that red light come on, you could bring your remarks to a conclusion. It doesn't mean you've got to stop in the middle of a sentence or a thought, but we'd be much appreciative if you could bring your remarks to a conclusion. As one of my colleagues is fond of repeating, the red light isn't aspirational. The second observation for you, as you proceed with your arguments, you may safely assume that we've had a chance to review the briefs, the record excerpts, and in many of the instances, we've had a chance to look at the record as well in the case, so feel free to go right to the heart of your argument. With that, again, welcome, and we'll begin with Tracy v. Florida Atlantic University. You may proceed, counsel. Thank you. May it please the Court, I'm Richard Olbermann. With me on the briefs is Steve Blinkensterfer and Rachel Oostendorp of the law firm Carleton Fields, and we represent Professor Tracy in this appeal. We think the case is of unusual public importance because a bedrock principle of the First Amendment is that it protects speech even if we hate it, and we've cited cases to that effect. FAU did not do that. Instead, they found a pretext for terminating Professor Tracy because of his blogging activity. Now, under the Patsy line of authority, Professor Tracy was not required to exhaust administrative remedies, but more to the point, or as much to the point, if you look at the Court would look at DE 93-3, which is the first entry in our appendix, the collective bargaining agreement does not require grievance, does not require, it provides the sole method of doing a grievance, but it does not require grievances be made, and in 20.2, the very next provision that's captioned, resort to other forums, and it explains that you can bring your cause of action or your claim in court or administrative proceeding or somewhere else, and if you do that, the university is not obligated then to proceed with the grievance procedure because you're in another court. So there was no obligation to grieve any claim here because the District Court dismissed three counts based on its belief that there was an obligation to grieve. The Court has to be reversed on that ground alone for those three counts. We briefed that in our, stated in our briefs, and the FAU has made no response to the 20.2 argument, and the Court disregarded it. I assume for the purpose of my question that we accept, or at least speaking for myself, that you can't waive, there's no requirement to exhaust under 1983. Let's get right to the heart of the claim, the First Amendment claim. Okay, Your Honor, and we agree with that. I think the other side, everyone has agreed that there is no obligation to exhaust administrative remedies for a constitutional claim unless Congress has carved out an exception to 1983. So we make two arguments. First, we say the policy with respect to reporting, blogging for conflict of interest purposes is unconstitutionally vague. Because that policy is vague, he could not be terminated for it. So that's full stop. Terminated for what, I'm sorry? For blogging. Well, that happened. Disclosing blogging. Well, I guess I'm a little confused because in 2012, we had the blogging, right? Yeah. And then three years later, he refused to sign the form. Check the box. Yes. Boy, how do you tie it back to the blogging? I'll explain that. In 2013 or 12 or 13, whichever year you want to consider it because I think the ruling may have been in 2013, if the court looks at Plaintiffs' Exhibits 5, 6, and 7, which the fact that he was engaged in offensive blogging that was upsetting everybody, that he was, his disclaimer wasn't adequate because he, although he said these were his own views, he still identified himself as an FIU professor. Well, I thought they worked that out and that if there was a disclaimer that they had signed off on and that that was just fine and now we're into a different year, several different years, and they get a form which he deliberately refused to fill out and sign. Yes. Okay, now where is the blogging in that form? I'll get to that. So the third ground in 2013 was that he didn't disclose the blogging. He responded, I don't have to. The policy doesn't require that. I don't see where it requires that. It's First Amendment activity, so I don't have to do that. He also said that... I know what he said, but what does it have to do with this particular incident? So what happened, Judge, was that the discipline was resolved and the only thing he was required to do was change his disclaimer so that he didn't identify and he was not required to disclose the blogging and he merrily continued on blogging for years, for two years. And during that time, it continued to be controversial. Pressure continued to build. Did he complete the conflict of interest form and did he check off the box as they requested? Yes or no? No, he didn't. All right. Okay. But Your Honor, my point is that you don't fill these forms out unless it's only for a reportable activity. One of the things that they tried to gloss over is the notion that everybody fills out this form, but you only fill out the form for what are called reportable activities. And at trial, it was admitted by Dean, Vice Provost Alperin, who made the decision to terminate him and who is in charge of administering the policy, that in all the years, all the years that she had looked at these forms, she had never seen one where any faculty member disclosed blogging. The testimony also was at least 20 faculty members were blogging and the university knew or engaged in other online speech like Facebook and Twittering and so on, and none of them disclosed it. Was there a testimony that they hadn't signed the form or checked the box? Yes, they didn't. You only do that for an activity that's reportable. You don't, you don't, it isn't some form that applies to everything. You only do it if it's a reportable activity. And the crux of our argument on vagueness is blogging is, there is no blogging policy. The conflict of interest provisions of the CBA, all the regulations, the statute is based on none of them say blogging is a reportable activity. What the university is saying is that, well, the term professional practice is broad enough to include blogging. But professional practice is not defined, and I think my guess would be, and you only can guess, is professional practice refers to, like a lawyer's practice, a doctor's practice, psychologists, there are many faculty members. Why didn't he fill out the form and say, I don't have any conflict of interest? Two reasons, Your Honor. He just didn't want to. I can answer. That's one reason. No, that's not why. Well, didn't he admit that he was purposefully being insubordinate? No, he did not. In fact, he doesn't believe he was insubordinate. His position is that the policy does not require the disclosure of blogging. And as I've said, nobody else has ever done that. But he didn't fill out the form at all, did he? He only fill out the form for activities that are reportable. So it's up to a faculty member to decide whether or not he would choose to fill out the form? Well, there's testimony on that that's an honor system and so on. But let me get back to your question, Judge Perry. Why didn't he do it? Well, the first reason is, as the testimonial trial established, the reason they want to have this disclosed is that they can then manage, approve or disapprove the activity. And his position was that this is protected expression. It is not subject to governmental approval or rejection. It is, in fact, protected. I don't understand his behavior. All you do is you fill out the form. You say, this is what I'm doing. I don't think it's a conflict. I'm not even sure I have to do it, but out of an abundance of caution. They come back after him later because they don't like the content of his blog. You've got a case. But to do what he did, I'm having trouble understanding his motivation. Well, as I said, one reason is that the purpose of the form is so that they can approve, disapprove or manage the outside activity. So let them do it. Let them fire him. Let them stop it. Then you've got a case. But he shouldn't have to do that if the standard is unconstitutionally vague, which it is. Where's the vagueness? What? Where is the vagueness? Okay. Tell me. Yes. And at some length, we argue in our brief that, first of all, blogging is no more mentioned in it. Second, there is no blogging policy, but also it's not mentioned in any of the different provisions on conflict of interest. And there's many. I think we made a whole list of them for you. Tell me what the most salient language in the policy is that you perceive as being unconstitutionally vague. Okay. They are saying their sole basis for saying blogging has to be disclosed is the phrase professional practice. No other professor has been held to be found to be violating the policy by not disclosing blogging. Doesn't that have a common meaning generally understood as... I think it does. Let me finish if I could. The exercise of a profession or an occupation or something like that, wouldn't most people know generally what the ordinary meaning is of a professional practice? Well, I think that's... You practice law, that would be a professional practice. So I think a lot of faculty members are lawyers. They're also psychologists, psychiatrists, doctors, and so on. They serve as faculty members, but they have a professional practice. Right. But what I want you to tell me is what there is inherent in the phrase a professional practice that is unconstitutionally vague to a person of ordinary understanding. It's unconstitutionally vague with respect to requiring blogging. It no... There is nowhere, no way you can read that as giving someone reasonable notice that blogging is required. And because that's the case, that allows university officials to selectively enforce it. And those are the two cardinal sins of vagueness that Your Honor identified for eight judges in the Walsh-Schlager case. What happened here is for two years, he blogged after a discipline that said you shouldn't blog, and then was resolved saying all he had to do was give the disclaimer. And then all of a sudden, they decide because things get controversial again. So you ask the question, why didn't he just do it? Well, at that point, he knows if that's a reportable activity, and he hasn't reported for two years, he's committed a violation. And second, if he agrees it's a reportable activity, that triggers the machinery of the university to be able to... But I guess the question my colleagues are asking you is, why couldn't he just fill out the form and say, I don't believe blogging is something that I'm obliged to report? Because as I see it, blogging has... It's incidental to, unrelated to a professional practice or a professional advocation. Yes, because... Why didn't he... He could have done that, couldn't he? Instead, he said, I'm not filling your form out at all. Thank you very much. What he said was, the policy does not, so far as I can tell from it, it does not require blogging. I'm the only one being required to do this, even though lots of other people blog. And the only reason I'm being required to do that is they don't like my speech. If I fill this out, then I'll be admitting to two years where I didn't report it. And I'll be saying this is an activity that they can decide, that they can manage, or they can disapprove, or otherwise regulate. Now, the district court... He didn't want to go through any of that. The district court found that the blog posts constituted protective speech. The case went to the jury, and the jury unambiguously found, after each side got to put on its evidence, that Tracy's protective speech was not the cause of his termination, and therefore the retaliation claim failed. Why isn't that the end of that piece of the case? Well, several reasons. But the first and most important is that this court, under Bose, and there's a very nice of Bose in a decision by Judge Perry that we note, and that this court has to conduct an independent, de noble, full record review of both the constitutional facts and the law in a First Amendment case. And we're saying that the jury verdict does not survive that level of scrutiny. Now, why doesn't it? Well, first, as we've said, blogging has not been required of anybody. Second, if you look at the facts, he's on paternity leave. There's no way that... He admitted he saw the form and just didn't do it. He did, but my point is, he's not teaching. Paternity leave is a total red herring. No, no, Your Honor. What the argument we're making is that because he's on paternity leave, he doesn't have any teaching obligations. So if he has any commitment of time to blogging, it isn't interfering. Well, okay. Okay. And then with regard to remuneration, they argue that he took money. But the record is clear that unless the remuneration is $10,000 or more, it's not reportable, not reportable. His remuneration was an $850 in contributions to his blog. They also say, well, you know, he wrote a book, but he didn't write a book. What happened was two editors got together and they put out an anthology on all kinds of writings, a whole bunch of writings on Sandy Hook. They called him up and said, hey, we'd like to use two excerpts from your blog. Will you let us? He said yes. He received an $800 honorarium from that after he was terminated. And on and on it goes. Every fact that they say shows that there was a reason for doing this. And remember, this form is to disclose an outside activity. They all know the activity. It's accessible to everybody. You can go look at it. I think we've got it. I don't mean to cut you off, but we're well over the time. And we'll give you the full rebuttal time unless you want to continue and eat into the rebuttal. I leave that to you. No, I'll wait for rebuttal. Thank you very much for your attention. Good morning. I'm Jack Aiello here representing the Defendant University and the individual defendants. I think the first thing I want to address is blogging. We've heard counsel say that the policy didn't address blogging as though it would have to have a separate provision to deal with blogging. Blogging is just a weblog. It's information that just happens to be on a computer screen, on the web, the internet. It's like an editorial in a newspaper that can just be accessed by anybody who has access to the internet. That's all it is. The reason a blog is obviously something that needs to be reported is because of its impact on the employee's time or possibly on his obligations to the school. It is speech, just as if it was written in a newspaper, in a book, or anywhere else, or on a soapbox. So to say that the policy didn't specifically mention blogging, well, I think the policy probably doesn't specifically mention every kind of form in which speech can occur. That doesn't mean that it wouldn't be reportable. And a great example, and maybe among the top reasons why the form needs to be filled out and Section 19 exists in the Collective Bargaining Agreement, is time conflicts. Imagine if an employee is maintaining blogs and similar things and spending 40 to 60 hours a week on it. And that employee decides, well, that's not reportable. Well, does the university not have the right to say, what is your plan for committing 40 hours a week to the job we're paying you for, to the betterment of the institution? Let me focus a couple of questions I have. Absolutely. Among other things, you argue that Tracy's failure to grieve under the agreement supported the district court's grant of summary judgment. And you suggest that the failure to grieve bars him from bringing a First Amendment claim under 1983. Does that overstate your argument? Perhaps slightly. Maybe why don't you frame it for me? Because I do not understand how he could be barred from bringing a 1983 claim. Whether he grieved or he didn't, and whether he was in error for not grieving or not, I'm at a loss to understand how that would preclude him from proceeding under 1983. That doesn't mean he wins. It just means he's got a gateway to get in the door. Correct. And he did get in the door on a 1983 claim. And he got a jury trial on a 1983 claim on retaliation for, his allegation is retaliation for exercising his First Amendment right to free speech. We do not contend that that had to be grieved. That is not an argument that was made. And of course, the district court did not resolve that. So you agree then that an employee is not required to make use of a contractually mandatory dispute resolution procedure before bringing a First Amendment claim? Yes, that's a First Amendment claim. That's correct. But the claims that he called a constitutional vague claim, constitutional as applied claim, those are misnamed. Those are not constitutional claims. The claim being made is that a provision in the contract is vague. So I don't think I should have to follow it, right? That is not a constitutional claim. There is a remedy for disputes about contract terms. And that is the grievance procedure. There's a difference between, in all of the case law that they propose to the court, deals with situations where either a law has required someone to change the way they speak, so that you then have a First Amendment right against a government entity imposing a law on the plaintiff, or a case involving retaliation, which that's not a contract claim. The Congress has determined that a Section 1983 retaliation claim can always be brought in court regardless of whether you have a contractual relationship with the defendant. And that happened here. And the plaintiff got a jury trial. Can he challenge a provision in the collective bargaining agreement? Not on vagueness grounds. Only in the grievance procedure. It's a contract claim. There was no case in this country that anybody could find where someone could bring a constitutional vagueness claim based on a policy or a provision in a contract. And there's a good reason for that. So your view is even if it is meaningfully vague and didn't accord proper notice, his only remedy was to go forward to challenge the CPA? He could do better than that. The CPA encourages informal resolutions of simple disputes. Why not, as your honors have suggested, just fill out the form or ask a question? I'm doing this. Is that reportable? Let me ask you as a prefatory matter, and I'd ask this question of Mr. Ovalman. Did the university require everybody to fill out the form? Or was that something that the professor was free to do or not, depending on whether in his judgment there was something reportable? Right. Much like your time deadline in court here, it was not aspirational. It's required. Article 19 of the collective bargaining agreement specifically lays out the requirements to advise the university when you're going to engage in specific activity. The form we're talking about just implements that policy. I think the Article 19 policy... But if I didn't engage arguably in the activity, was I required to fill out the form? If you did not engage in the activity... Yes. I'm a professor at the university. I didn't do anything that came within a country mile of what the policy said. Was I required? Did the university require me to fill it out? Was everybody required to do that? You had to fill it out if you have something that is... The answer is no, unless in my judgment I was of the view that there was something reportable. Anything that takes time... Let me come at it in a different way. As a federal judge, I'm required, as is every Article 3 judge in the United States, to fill out a financial disclosure form. I got to fill it out, whether I think it makes sense or not. If I own one share of Coca-Cola stock, common stock, I must report it. Is it your view that under these rules of the game, a professor was required to fill out these forms under all circumstances? Or did he only have to fill it out when there was something reportable? Do you understand the thrust of my question? I'm not sure that I understand how this worked at the university. I'm trying to have you folks sort of illuminate that for me. If you're asking whether the professor has to sign a blank form if he's not engaging in any other activity, I don't know the answer to that. I do know if he's engaging in... They didn't require everybody to fill the form out. The university didn't send the form to every single professor, associate professor, adjunct, etc., and say, here's the form, fill it out, whether there's something reportable or not. Do I have that right? I don't know if they had to sign a blank form. I just know that they had to report outside activity as set forth... If they had outside activity, they had to report it. For sure, that's true. But if they didn't have outside activity, they didn't have to report it. If they had no outside activity, there would be nothing to report.  I'm not trying to quibble. I'm just trying to understand whether it was precatory or mandatory and who made the decision. It was mandatory to report outside activity... If you had an outside activity that was reportable. That part I know for sure. Did you have to check the box to agree to report outside activities? Yes, you did. Did everybody have to check the box? Yes, as of 2014 when it was added. It was an online system where to accept your assignment for the next school year, which included the classes you were going to teach and other things you would have to do. You also had to check a box acknowledging that you were obligated to complete the form relating to outside activities. And everybody had to do that? Everybody did it except for one person. All right. So the point I was making about the legal question is, is there an action that can be brought in a court of law because you think the contract you agreed to enter into is vague? No. The reason there's no case law about that is because you had protection. You agreed to this. You negotiated it and you accepted employment on those terms. Why you can bring a constitutional claim with regard to a law is because you didn't get to sit down and negotiate it. That's unilateral. The government passed a law and said now everybody has to follow this. And that's why we have the Bill of Rights, to protect us from perhaps an overzealous action by the government. That's what the First Amendment is for. It's not needed for contract. You cite Hawks for the proposition that a provision in a collective bargaining agreement cannot be challenged as being unconstitutionally vague. That the remedy he had, and the sole remedy that he had, was to challenge under the grievance process the provision itself. There are other cases that kind of suggest that that's not right, although they're not squarely on point. One that I looked at, Hamilton v. Postal Service, the Eighth Circuit entertains a vagueness challenge to a postal service policy regarding discipline for excessive absences. The court held that the standard for discipline in the collective bargaining agreement was not unconstitutionally vague. Not that the vagueness challenge was otherwise unavailable. It doesn't mean they squarely faced exactly the point you're making here, but it's suggestive. There was another case that came out of the Third Circuit that I looked at, Wilson v. Pennsylvania State Police, an unpublished opinion where they upheld a provision in the CBA as not being unconstitutionally vague without addressing the argument that the vagueness doctrine didn't apply at all. We've never addressed it. Maybe you're right about Hawks, maybe you're not. But let's assume for the purposes of my question that you're wrong. And we have to actually go to whether the policy is unconstitutionally vague. Is it? No, Your Honor. Tell me why not. Because a person of ordinary intelligence can understand the definition of a reportable outside activity. It means any compensated or uncompensated professional practice, consulting, teaching, or research which is not part of the employee's assigned duties and for which the university has provided no compensation. The guidance available to the employee as to the reason for that form tells you what you need to report. They're concerned about time conflicts. That's the number one thing. If you're spending time on it, the university has the right to know it. Being a professor at a modern university is a privilege. It's a great gig. They're at the university for a few hours during the week teaching classes, and the rest of the time the university doesn't know where they are. They're not accounted. They don't have to sit in an office. They're not visible from 9 to 5. And so they're being paid for a 40-hour work week. The university surely has the right to know if they're involved in other things that may make it difficult or impossible to carry out their functions for the betterment of the university and its students. They're just asking, what are you doing? What is the harm in asking, what are you doing? How can an employee say, I'm not going to tell you what I'm doing, even though you're paying me for this time, because I'm afraid you'll abuse that information? As you said, Judge Karnes, fill out the form. As the union said, fill out the form. If the university then abuses that information, then you have a claim. And by the way, at the end of the grievance process, if an employee is not satisfied with that, it is reviewable. It goes to arbitration, and then that's reviewable in court. But that is the procedure that every employee agreed to when they entered into this agreement by taking a job at the university. And that's what makes it fair. That's why we don't have constitutional claims and should not have constitutional claims. I can't speak to the Hamilton case, Your Honor. It may be that counsel didn't raise the issue. That happens a lot. But the point is, when you've agreed to a bilateral contract, and you've agreed to the remedies, and your complaint is about the application of a provision in that contract, whether you think it's vague or unfair or whatever, you are left to the remedy that you also agreed to. It wasn't imposed on you. You chose it. If Your Honor has no further... I do. All right. I have some more. And you've got some time left. Okay. Um, in resolving the post-trial motions that Tracey made, the district court held that Tracey lacked standing to pursue the claims after the jury verdict on the retaliation claim. I'm not quite sure I understand why the district court said that. Are you defending that position? I think it's... Do you think that Tracey was outwithout standing to make these post-verdict attacks with respect to the retaliation claim? It wasn't the retaliation... He may not be right on the merits, but I'm at a loss to understand why he was denuded of standing and that the issue would no longer be justiciable. All right. Are you defending that? Do you think that it's non-justiciable? Yeah, I think that it's an alternative basis for affirmance, but I think the judge is right. What she was saying is that the plaintiff did not have standing to bring the constitutional vague claim, the constitutional as-applied claim with regard to the policy. It didn't have to do with the jury verdict and attacking the jury verdict. Plaintiff was trying to still attack the summary judgment on... Right, but here Tracey has appealed the jury's verdict on the retaliation claim. And if he otherwise was right, he would get a new trial. Correct. And he could be reinstated as a professor at FAU. It seems to me his Article III standing is exactly the same post-trial as it was pre-trial. Maybe I'm missing something there. Okay, right. And you know what? And I don't know if the judge's opinion explained this clearly enough, but I believe what she was saying, and certainly the argument I would make is if the jury verdict is upheld, then there's no standing on the other counts because the other counts sought reinstatement. The jury has already determined that the plaintiff was not improperly dismissed from the university. And so if that can't be reversed, then there's no point, even if there was some proper basis to bring a constitutional claim on this contract provision, there's no point in doing it because reinstatements are no longer possible. That is what I understood the judge to be saying. All right. Anything further on the post-trial attack on the verdict? We put in our brief a long sampling of the evidence that easily provides legally sufficient evidence for the jury and easily, as the trial judge says, the great weight of the evidence supported the defendant's case such that if the jury had come down the other way, the trial court should have been seriously entertaining a new trial for the defendant's sake, were they to move for a new trial. And I don't have time to go through all that evidence, but it is pretty well covered in our brief. The judge highlighted some of the evidence and then she talked about how plaintiff's evidence was questioned in every possible way. One piece of evidence I want to point out, the decision not to check the box and fill out the forms for the reason that we're hearing, we're afraid that the university is going to abuse it, there was precedent for this. They met in 2013 right after this blog came into being and the deeply offensive blogging, as the plaintiff's counsel has labeled it, occurred. And the university didn't ask the professor to stop blogging, didn't even try to do that, didn't ask him to stop talking about anything in particular. The university was then being besieged by media calls for the firing of the professor. Students were withdrawing. Donors were becoming reticent about their commitment to the university. So if the university was going to do something to try to limit blogging or limit First Amendment rights, that would have been the time to do it. Instead, they just said, please include a disclaimer so that you are admitting that you are speaking for yourself. You can't speak for us. Professor agreed to that, didn't follow through. They had further proceedings and it resulted in that settlement in 2013. But that's how the university handled that. The university knows it can't tell the professor what to say and what not to say, but it has a right to know what he's doing. Thanks very much. Thank you, Your Honor. Mr. Ovalman, you reserve two minutes for rebuttal. I'll try to be efficient. First, I want to correct the record. Tracy did check the box. He checked it in the, after the, before he was terminated. It was at the record at DE 93-20. Second, I'd like to address the Hawks case. Our position on Hawks is that it's inapposite because it doesn't involve the First Amendment. It doesn't cite any authority.  But also, Hawks is clearly wrong because 42 U.S.C. 1983 is not limited to statutes, ordinances, and so on. It includes customs, usages, and policies. So 1983 extends to all that. And there is no congressional carve out for a case in which there's a CBA. Now, they say that you can't assert vagueness even though the one, you know, Chapter 42 U.S.C. 1983 reaches that stuff. I will tell the court, and I apologize to the court, but last night we found a case that was decided June 6, June 3, 2019, that was just reported. It's called Walter v. Queens College. And it's 2019 Westlaw 234-2700. It's a case in which there was a CBA. It was grieved. The guy lost the grievance. And then he asserted in court a vagueness claim and won. Actually, the court said that's a good cause of action. You can assert vagueness with respect. And it was a university policy, you know, that wasn't a statute. It was a sexual misconduct policy. Now, we also found, because we thought this might come up, two other cases that do hold the same way. National Abortion Federation v. MARTA, which is 112-F-SUP-1320. And MARTA, this court may be familiar with it. It was the Atlanta case involving the metro system. And they had a policy, and the court held that it could be a challenge for vagueness even though it wasn't legislative. And then there is a Sixth Circuit case, the same circuit as Hawks, which holds that a policy that related to racial discrimination or racial harassment could be challenged under vagueness even though it wasn't legislative. And it was a case in which a co-chief... Give us the site. Yes, I'm sorry. It is 55-F-3-1177. 55-F-3-1177. But I think Hawks, if I could just make one more point. Hawks is inapposite for another reason. The policy here, while it's in this CBA, is required by Florida's statute, Chapter 112.313, which imposes a conflict of interest requirement. It's then required by university regulations 5.12, 5012. That's a DE4415, regulation 5.011. That's cited in our initial brief in a footnote. It's cited in the guidelines. No, I think we've got that. I'm sorry? I think we've got the issue. Okay. We thank you for your efforts. Could I add one thing, Your Honor? Sure. Dean Coltman, who was one of the two officials involved in the firing, was asked whether or not blogging is a reportable activity. And she said at deposition, I don't know. At trial, she was asked the same question, and she changed her testimony, but she changed it to, well, I think it would be determined on a case-by-case basis. And the problem with that answer is it's no better in a vagueness case. If you have to wait for case-by-case adjudication, you haven't given the notice. And that testimony is at, just give me a second. I'll give you the citation. It's at transcript volume 5 at 211. It's in the appendix at 9. Thanks very much. One final thing. If you'd be kind enough to submit a 20HA letter within the next seven days to the court, copies to your colleague, laying out the citation to these three cases, and we will give you an opportunity within the same seven days to file a 20HA letter telling us what you think about those cases and their application. With that, we thank you all for your efforts. Thank you, Your Honor. We will proceed to the next case.